# United States Court of Appeals
## For the First Circuit

No. 02-2439

CLARIBEL RIVERA-JIMÉNEZ; ENRIQUE L. PIÑERO-SANTIAGO;
CONJUGAL PARTNERSHIP PIÑERO-RIVERA; ELISBEL MALDONADO-RIVERA;
VIVIAN ROSADO-SOTO; CONJUGAL PARTNERSHIP MALDONADO-ROSADO,

Plaintiffs, Appellees,

v.

PEDRO PIERLUISI, Secretary of Justice; LYDIA MORALES;
DOMINGO ALVAREZ, Individually and in his capacity as Director
of the Corruption and Organized Crime Investigations Division;
MIGUEL GIERBOLINI, Individually and in his capacity as
Sub-Director of the Special Investigations Bureau;
ISMAEL CASTRO, Individually and in his capacity as Interim
Director of the Division for the Investigation of Public
Officials involved in Organized Crime (SIFACO);
ERNESTO FERNÁNDEZ, Individually and in his capacity as Interim
Director of the Organized Crime Division,

Defendants, Appellants,

JOSÉ FUENTES-AGOSTINI, Individually and in his capacity as
Secretary of Justice of the Commonwealth of Puerto Rico;
ANÍBAL TORRES, Individually and in his capacity as Director of
Special Investigations Bureau; JOSÉ VÁZQUEZ-PÉREZ, Individually
and in his capacity as Assistant District Attorney for the
District of Carolina,

Defendants.

---

No. 02-2440

CLARIBEL RIVERA-JIMÉNEZ; ENRIQUE L. PIÑERO-SANTIAGO;
CONJUGAL PARTNERSHIP PIÑERO-RIVERA; ELISBEL MALDONADO-RIVERA;
VIVIAN ROSADO-SOTO; CONJUGAL PARTNERSHIP MALDONADO-ROSADO,

Plaintiffs, Appellees,

v.

JOSÉ FUENTES-AGOSTINI, Individually and in his capacity as

Secretary of Justice of the Commonwealth of Puerto Rico;
ANÍBAL TORRES, Individually and in his capacity as Director of
Special Investigations Bureau,

Defendants, Appellants,

PEDRO PIERLUISI, Secretary of Justice; LYDIA MORALES;
DOMINGO ALVAREZ, Individually and in his capacity as Director
of the Corruption and Organized Crime Investigations Division;
MIGUEL GIERBOLINI, Individually and in his capacity as
Sub-Director of the Special Investigations Bureau;
ISMAEL CASTRO, Individually and in his capacity as Interim
Director of the Division for the Investigation of Public
Officials involved in Organized Crime (SIFACO);
ERNESTO FERNÁNDEZ, Individually and in his capacity as Interim
Director of the Organized Crime Division; JOSÉ VÁZQUEZ-PÉREZ,
Individually and in his capacity as Assistant District Attorney
for the District of Carolina,

Defendants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

---

Before
Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

---

Eduardo A. Vera-Ramírez, with whom Anabelle Rodríguez,
Secretary of Justice, Landrón & Vera, LLP, and Eileen Landrón-
Guardiola, were on brief, for appellants Pedro Pierluisi, Lydia
Morales, Domingo Alvarez, Miguel Gierbolini, Ismael Castro, Ernesto
Fernández.
Esther Castro-Schmidt, with whom Anabelle Rodríguez, Secretary
of Justice, were on brief, for appellants José Fuentes-Agostini and
Aníbal Torres.
Irma R. Valldejuli, on brief for appellee Claribel Rivera-
Jiménez.
Mariángela Tirado-Vales, on brief for appellee Elisbel
Maldonado-Rivera.

---

March 29, 2004

---

**TORRUELLA, Circuit Judge.** Defendants-appellants seek to appeal the district court's denial of their summary judgment motions. The motions were predicated in part on a state official's qualified immunity from suit. Plaintiffs-appellees Claribel Rivera-Jiménez ("Rivera") and Elisbel Maldonado-Rivera ("Maldonado") challenge this court's jurisdiction to review the appeal. For the reasons stated below, we affirm in part and dismiss in part.

## I. Background

Plaintiffs Rivera and Maldonado brought an action in September 1997 under 42 U.S.C. § 1983 for alleged violations of their rights under the First and Fourteenth Amendments of the United States Constitution and Article II, § 4 of the Constitution of the Commonwealth of Puerto Rico.

Both plaintiffs worked at the Commonwealth of Puerto Rico's Department of Justice.[1] Rivera was a special agent at the Special Investigations Bureau ("SIB") of the Department of Justice from 1989 until her employment was terminated in 1999. In 1996, Rivera was conducting an investigation into a December 1989 murder

---

[1] In reciting a factual overview, we seek only to give context to our jurisdictional ruling and do not disturb any of the district court's findings. The official positions of the named defendants are given for the time period relevant to the factual allegations on which the complaint is based, except for the position of Secretary of Justice and Director of the Special Investigations Bureau, where there was a change of personnel in both positions in 1997.

in which criminal charges had not been filed. During the investigation, she learned that Lydia Morales ("Morales"), Director of SIB until 1997, was the local prosecutor who had been assigned to investigate the crime shortly after it happened. Rivera concluded that Morales had acted at least negligently or otherwise unlawfully. She filed a report which she allegedly showed to her supervisors. At some point, Rivera alleges, she was perceived by her supervisors as leaking this report to the local press. Despite charges being filed in the murder case, Rivera continued in her attempts to bring attention to the alleged corruption within SIB. Rivera alleges in her complaint that after communicating the report's findings to her superiors she was the object of hostility and abuse in the workplace.[2]

Plaintiff Maldonado began his employment at the SIB in 1995. He was assigned to investigate drug trafficking and weapons smuggling by public officials. In September 1996, Maldonado discovered that some files were missing from his locked file cabinet. The files were related to one of his investigations at SIB. He clashed with his supervisor Ismael Castro ("Castro") over this investigation and the issue of the stolen files. The local press learned of the stolen files and reported the story leaving SIB personnel to think Maldonado leaked the story. In addition,

---

[2] Rivera conducted a subsequent investigation into casino licensing, after which, she alleges her supervisors requested she keep the results of that investigation to herself.

Maldonado was also asked what he knew about Rivera's investigation by Morales and a local prosecutor in a meeting, and by Castro. He alleges that he began receiving negative evaluations at work and was the object of retaliatory harassment by his supervisor and other agents at SIB.

Plaintiffs brought a complaint against the Secretary of the Department of Justice, their respective supervisors and the head of the SIB. Plaintiff Maldonado's claims against defendant José Fuentes-Agostini ("Fuentes-Agostini") were voluntarily dismissed.[3]

After discovery was completed, the remaining defendants filed motions for summary judgment. Defendants Fuentes-Agostini and Aníbal Torres ("Torres"), director of the SIB after 1997, argue several issues in their brief, including whether the First Amendment law was clearly established at the time the alleged constitutional violation took place. The other co-defendants, Pedro Pierluisi ("Pierluisi"), the Secretary of Justice until 1997; Morales, director of the SIB; Domingo Alvarez ("Alvarez"), director of the Corruption and Organized Crime Investigation Division of SIB; Miguel Gierbolini ("Gierbolini"), sub-director of the SIB; Castro, the interim director of the Division for the Investigation of Public Officials involved in Organized Crime; and Ernesto

---

[3] Co-defendant Fuentes-Agostini was sworn in as Secretary of Justice in January 1997. Maldonado had not advanced any specific claims against Fuentes-Agostini.

Fernández ("Fernández"), the interim director of the Organized Crime Division, argue that they are entitled to qualified immunity.

The summary judgment motions were referred to a magistrate judge for report and recommendation. The magistrate judge recommended that all motions for summary judgment be denied except Pierluisi's motion as to Maldonado's claims and all claims against Fuentes-Agostini for money damages in his official capacity.[4]

The district court adopted the Report and Recommendation after receiving defendants' objections. Defendants-appellants appeal from this order.

## II. <u>Jurisdiction</u>

Defendants-appellants assert that this court has jurisdiction to hear an interlocutory appeal of the district court's denial of their motions for summary judgment based on the doctrine of qualified immunity.

Defendants-appellants Pierluisi, Morales, Alvarez, Gierbolini, Castro and Fernández argue that jurisdiction arises under 28 U.S.C. § 1292(b). Defendants-appellants Fuentes-Agostini and Torres-Rivera argue that jurisdiction arises under 28 U.S.C. § 1291.

---

[4] This recommendation, based on Puerto Rico's Eleventh Amendment's immunity from suit, is not at issue.

Under 28 U.S.C. § 1291, the courts of appeal have jurisdiction over "all final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291. Under 28 U.S.C. § 1292(b), appellate courts have jurisdiction over interlocutory appeals where a "controlling question of law" is involved, and there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Section 1292(b) allows for district judges to certify questions of law for review by the appellate court. In this appeal, the district judge did not certify any such question. Therefore, we determine that only 28 U.S.C. § 1291 may apply, and examine whether the order appealed from is a final order within the meaning of 28 U.S.C. § 1291.

It is a well-settled proposition that denials of qualified immunity that turn on issues of fact rather than issues of law are not immediately appealable as final orders. See Johnson v. Jones, 515 U.S. 304, 311-12 (1995); Suboh v. Dist. Attorney's Office, 298 F.3d 81, 89-90 (1st Cir. 2002); Stella v. Kelley, 63 F.3d 71, 74 (1st Cir. 1995). Defendants, who did not argue the jurisdictional issue, seek to frame all the issues on appeal as legal, not factual, ones. They argue that they were entitled to qualified immunity as a matter of law and that the district court erred in adopting the Report and Recommendation. We are convinced that only certain aspects of the order denying summary judgment are appealable. We explain.

In _Johnson_ v. _Jones_, 515 U.S. 304, 319-20 (1995), the Supreme Court held that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."

After evaluating the First Amendment claims brought by plaintiffs, the magistrate judge concluded her recommendation as follows:

> [h]ere, as to both plaintiffs, there are fact issues regarding the motives of defendants. Indeed, a factor to consider in the case at bar is the motive for the alleged adverse employment action taken against the plaintiffs . . . . Further, the evidence relating to the defendants' motivation in the action taken against plaintiffs is a factual matter . . . . Accordingly, because there are factual issues as to an essential element of plaintiffs' claims (i.e., the motivation of defendants in the actions taken against plaintiffs) defendants' motions for summary judgment on the basis of qualified immunity must be denied.

Some of the defendants in this appeal seek to appeal issues relating to the plaintiffs' First Amendment claim. However, we do not have jurisdiction over denials of summary judgment motions where a party seeks to appeal issues of evidentiary sufficiency, or where a genuine issue of material fact remains in dispute. In this case, the genuine issue of material fact which is in dispute is the defendants' motive in the adverse employment

-8-

actions. "[A] summary judgment order which determines that the pretrial record sets forth a genuine issue of [material] fact, as distinguished from an order that determines whether certain given facts demonstrate, under clearly established law, a violation of some federally protected right, is not reviewable on demand." Stella, 63 F.3d at 74.

The court below addressed the evidence supporting both plaintiffs' First Amendment claims, dissecting them into the three elements, and came to the conclusion that genuine issues of material fact precluded entry of summary judgment. We do not have jurisdiction to hear appeals of this nature. See Acevedo-García v. Vera-Monroig, 204 F.3d 1, 10 (1st Cir. 2000) (holding that, when an appeal from a denial of qualified immunity challenges the sufficiency of the evidence, no appellate jurisdiction exists); Guilloty-Pérez v. Fuentes-Agostini, 196 F.3d 293, 294 (1st Cir. 1999) (no appellate jurisdiction when district court denied summary judgment motion "because there were material factual issues both as to the nature of the involvement of [defendants], as well as their [sic] motivations for their involvement") (internal quotation marks omitted).

In Guilloty-Pérez, 196 F.3d at 294, a case strikingly similar to the present one, we dismissed the appeal for lack of jurisdiction. There, as here, the lower court denied qualified immunity to the officers because genuine issues of material fact

existed as to the defendants' motivation.  Id.  We are presented with the same issue.  We cannot review the district court's rulings as to the sufficiency of the claims because certain determinations remain to be made by the factfinder.  Therefore, no appellate jurisdiction exists under 28 U.S.C. § 1291 because the denial of these summary judgment motions is not a final order.  See Acevedo-García, 204 F.3d at 10.

### III.  Qualified Immunity

"Denials of summary judgment on qualified immunity grounds are reviewed to the extent that the qualified immunity defense turns upon a purely legal question and any disputed facts are not material to the issue of immunity."  Suboh, 298 F.3d at 89-90 (citing Fletcher v. Town of Clinton, 196 F.3d 41, 45 (1st Cir. 1999) (internal quotation marks omitted)).  To determine whether an official is entitled to qualified immunity we use a three-part test: first, whether a constitutional violation has been alleged if plaintiffs' allegations are established as true; second, whether the law was clearly established at the time of the alleged violation; and last, whether a reasonable official, similarly situated would understand that the challenged conduct violated a constitutional norm.  Id. at 90; see also Wilson v. Layne, 526 U.S. 603 (1999).

For the reasons stated above, we lack jurisdiction to review the lower court's determination that genuine issues of

-10-

material fact exist as to the defendants' motives in taking various allegedly retaliatory actions against the plaintiffs. However, the first prong of the qualified immunity inquiry -- whether plaintiffs' allegations, if true, establish a claim of retaliation in violation of the First Amendment -- implicates two other questions, both of which are considered legal in nature, and therefore subject to appellate review at this time insofar as they could potentially sustain qualified immunity objections. See Mihos v. Swift, 358 F.3d 91, 105 (1st Cir. 2004) (stating that a mere issue of fact on unconstitutional motive does not carry plaintiff to trial because defendant may prevail on other basis).

The first is whether plaintiffs' speech touches on matters of public concern and is therefore protected under the First Amendment. See id. at 102-03; see also Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 11 (1st Cir. 2003). Here, despite defendants' arguments to the contrary, plaintiffs' speech raised the possibility of corruption in a public agency and is therefore protected under the First Amendment. Torres-Rosado at 11-12 (even internal memoranda raising such concerns are protected).

The second is whether an employee's First Amendment interests outweigh the government's interests as an employer in avoiding disruption in the workplace -- the so-called Pickering balancing test. See Mihos, 358 F.3d at 103 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)); see also Torres-Rosado,

-11-

335 F.3d at 11, 13. Although this determination is usually a legal one, it may be necessary to resolve the disputed questions of fact (such as whether a defendant's claim of potential disruption is reasonable) before an evaluation can properly be made. See Johnson v. Ganim, 342 F.3d 105, 114-15 (2d Cir. 2003). On this record, we agree with the magistrate judge that the defendants' allegations of disruption fail to show that they are entitled to summary judgment on this issue as a matter of law.

In addition, the defendants argue that neither plaintiff has suffered a sufficiently adverse employment action to support a First Amendment retaliation claim. Although defendants contend that this is a legal determination capable of review at this juncture by virtue of defendants' assertion of qualified immunity, it is not entirely clear this is so. See Myers v. Neb. Health & Human Servs., 324 F.3d 655, 660 (8th Cir. 2003) (holding that this is a jury issue, at least where there are material facts in dispute as to whether employer's action affected a material change in employee's working conditions).

In any event, the standard for showing an adverse employment action is lower in the First Amendment retaliation context than it is in other contexts (such as Title VII), see Power v. Summers, 226 F.3d 815, 820-21 (7th Cir. 2000), and the Supreme Court has indicated that even relatively minor events might give rise to liability. See Rutan v. Republican Party of Ill., 497 U.S.

62, 75-76 & n.8 (1990); see also Coszalter v. City of Salem, 320 F.3d 968, 974-77 (9th Cir. 2003) ("To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind."); Power, 226 F.3d at 820 ("Any deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable . . . ."); but see Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000) (holding that some employment actions are not actionable even though they have the effect of chilling the exercise of free speech).

Here, the plaintiffs have alleged sufficiently adverse employment actions to sustain their retaliation claims. Plaintiff Rivera claims that she was subjected to, among other things, internal investigation and ultimately dismissal as a result of engaging in protected speech. Plaintiff Maldonado claims that he was subjected to, among other things, the denial of special benefits and assignments. Assuming these allegations are true, Suboh, 298 F.3d at 90, and absent more information minimizing the impact of the denial of benefits, plaintiffs have alleged sufficiently adverse employment actions to underpin a claim of impermissible retaliation.

We turn now to the second prong of the qualified immunity analysis. "The question of whether a right is clearly established is an issue of law for the court to decide." Suboh, 298 F.3d at 90

-13-

(citing Elder v. Holloway, 510 U.S. 510, 516 (1994)); see also Stella, 63 F.3d at 77. Defendants Fuentes-Agostini and Torres argue that the court below erred in determining as a matter of law that plaintiffs' First Amendment right was clearly established in 1996 and 1997, when the injuries are alleged to have occurred.

"One tried and true way of determining whether [a] right was clearly established at the time the defendants acted, is to ask whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." Suboh, 298 F.3d at 93 (citation omitted). The magistrate judge did exactly this, looking to the caselaw as it existed at the time, which had held that these types of retaliatory action in employment, involving a public employee's speech on a question of public concern, was a clear violation of the First Amendment.[5] Moreover, the unconstitutionality of such retaliation was clearly established in this circuit and the Supreme Court at the time of the alleged violations. See, e.g., Rutan, 497 U.S. 62 (1990) (holding that conditioning any employment promotion or action on patronage violates a public employee's First Amendment rights absent compelling government interest); Branti v. Finkel, 445 U.S. 507 (1980) (holding that public employees may not be retaliated against in violation of the First Amendment rights); Broderick v.

---

[5]  She looked to a consent decree entered into in the District of Puerto Rico, Pierluisi v. El Vocero, Civ. No. 95-1312(HL)(D.P.R.), where the claims alleged were the same as here.

Roache, 996 F.2d 1294 (1st Cir. 1993) (holding that a police officer who filed a grievance and was subject of workplace retaliation has stated a prima facie case for First Amendment retaliation); Romero-Barceló v. Hernández-Agosto, 876 F. Supp. 1332, 1347 (D.P.R. 1995), aff'd, 75 F.3d 23 (1st Cir. 1996) (stating that courts have recognized the government cannot terminate public employees in retaliation for certain disfavored speech activities) (citing First Circuit cases).

We are convinced that the contours of plaintiffs' First Amendment rights were clearly established as a matter of law and therefore affirm the lower court's determination on that issue.

As to the third prong of the qualified immunity determination, "[t]he reasonableness inquiry is also a legal determination, although it may entail preliminary factual determinations if there are disputed material facts (which should be left to a jury)." Suboh, 298 F.3d at 90 (citing Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997)). In the instant appeal, the lower court determined that questions remained as to the issue of defendants' motive which precluded entry of summary judgment on qualified immunity grounds. Since "pre-trial qualified immunity decisions are immediately appealable as collateral orders when the immunity claim presents a legal issue that can be decided without considering the correctness of the plaintiff's version of the facts," Acevedo-García, 204 F.3d at 14, we cannot exercise

jurisdiction over this part of the qualified immunity analysis. Doing so would entail making a determination of material facts.

## IV.  Conclusion

Therefore, we affirm the district court's holding to the extent described above.  The remainder of the appeal is dismissed for lack of jurisdiction.

**Affirmed in part, dismissed in part**.