Ivett **VELEZ–HERRERO,** et al., Plaintiffs,

v.

**Rafael L. GUZMAN, et al., Defendants.**

**No. CIV.02–2022(JAF).**

United States District Court, D. Puerto Rico.

Aug. 13, 2004.

self-employment and are not special medical assistive tools for someone who is physically disabled.

Carlos R. Ramirez, Esq., John F. Nevares & Assoc. PSC, San Juan, PR, for Plaintiffs.

Gloriana S. Hita–Valiente, Esq., Llovet Zurinaga & Lopez, PSC, Milagros Del Carmen Lopez–Perez, Esq., Sanchez–Betances & Sifre, P.S.C., San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Ivett Vélez Herrero ("Plaintiff Vélez"), Luis Alfredo Millán Rivera ("Plaintiff Millán"), and the conjugal partnership composed between them, filed the present complaint against Rafael L. Guzmán, Executive Director of the State Emergency Management and Administration of Disasters Agency ("SEMADA"), in his personal and official capacities ("Defendant Guzmán"), Ileana Rivera Gómez ("Defendant Rivera"), in her personal capacity, and Efraín Alejandro Berríos, Executive Director for the Fajardo Region of SEMADA, in his personal and official capacities ("Defendant Alejandro"); and other unknown defendants, pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution, U.S. CONST. amends. I, V, and XIV; 42 U.S.C. §§ 1983 and 1985 (1994 & Supp. 2003); the Puerto Rico Public Service Personnel Act, 3 L.P.R.A. § 1301, *et seq.* (2000) (the "Puerto Rico PSPA"); and Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141 (1990 & Supp.2000) ("Article 1802"). *Docket Document No. 1.*

Defendants Alejandro, Guzmán, and Rivera move for summary judgment. *Docket Document Nos. 28, 36, 39, 47.* Plaintiffs oppose the motions. *Docket Document No. 45.* Upon careful review of the pleadings, the submitted evidence, and applicable case law, the court denies Defendant Alejandro's motion and grants in part and denies in part Defendants Guzmán and Rivera's motion.

## I.

### Factual and Procedural Synopsis

Unless otherwise indicated, we derive the following factual summary from the complaint and the parties' statements of facts submitted in their summary judgment and opposition motions. *Docket Document Nos. 28, 36, 39, 45, 47.*[1]

Plaintiff Vélez is a United States citizen residing in Puerto Rico, and is married to Plaintiff Millán. Plaintiffs are affiliated with the New Progressive Party ("NPP").

Defendant Alejandro is presently the Executive Director of SEMADA's Fajardo office, and was at the time in question Interim Director of SEMADA's Humacao region office. Defendant Rivera is the former Executive Director of SEMADA. Defendant Guzmán is the current Executive Director of SEMADA. All Defendants are United States citizens and affiliated with the Popular Democratic Party ("PDP").

Plaintiff Vélez began working at SEMADA in May 1995 as an Office Systems Assistant I, a career position. She presently holds the same position.

In November 2000, general elections were held in Puerto Rico, and the PDP defeated the then incumbent NPP. The newly-elected governor, Sila Calderón, appointed Defendant Rivera as SEMADA's Executive Director. Thereafter, Defendant Guzmán was appointed as Executive Director of SEMADA, apparently to replace Defendant Rivera, and Defendant Alejandro was appointed as interim director of SEMADA's Humacao region.

When Defendant Alejandro started working as interim director of the Humacao regional office, he allegedly reduced Plaintiff Vélez's responsibilities as Office Systems Assistant I. *Docket Document No. 45.* Myrna Vázquez Díaz ("Vázquez"), a member of the PDP, started working in February or March 2001, and took over

---

1. We disregard the parties' Spanish-language exhibits. *Estades–Negroni v. Assoc. Corp. of N. Am.,* 359 F.3d 1, 2 (1st Cir.2004) (holding that non-English materials submitted for review may not be considered during the pretrial process or become part of the record).

Plaintiff Vélez' responsibilities. *Docket Document No. 45.* Defendant Alejandro removed Plaintiff Vélez' office equipment and transferred it to Vázquez. Plaintiff Vélez did not suffer a salary reduction. *Docket Document No. 28.*

On August 7, 2002, Defendant Guzmán designated Luis Island ("Island") to substitute Defendant Alejandro as Acting Director of SEMADA's Humacao office. Before leaving the Humacao office, Defendant Alejandro told Island that Plaintiff Vélez was not a person of trust to the current (PDP) administration. *Docket Document No. 45, Exh. 7.*

Plaintiff Vélez sent two letters to Defendant Rivera outlining the problems she was having with Defendant Alejandro. *Docket Document No. 36. Exh. 5, 6.* On August 7, 2002, Defendant Guzmán informed Defendant Alejandro that, in order to correct the problems with Plaintiff Vélez in Humacao, he would be transferred to Gurabo. *Docket Document No. 36, Exh. 3.*

Plaintiffs filed the present complaint on July 3, 2002, alleging violations of the United States Constitution, the Puerto Rico PSPA, and Article 1802. *Docket Document No. 1.* Plaintiffs seek compensatory and punitive damages, injunctive relief, and attorney's fees. *Id.*

On February 11, 2004, Defendant Alejandro moved for summary judgment. *Docket Document No. 28.* Defendants Guzmán and Rivera filed a motion for summary judgment on February 27, 2004. *Docket Document No. 36.* On March 19, 2004, Plaintiffs filed an opposition to both motions. *Docket Document No. 45.*

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### *Analysis*

### A. *Defendant Alejandro's Motion*

Defendant Alejandro moves for summary judgment, averring that Plaintiff Vélez has neither established that political

affiliation was a factor behind the alleged impermissible personnel transaction nor suffered an adverse employment action. *Docket Document No. 28.* Alternatively, Defendant Alejandro alleges he is entitled to qualified immunity. *Id.*

### 1. *Mt. Healthy Burden–Shifting Analysis*

In *Mt. Healthy City School District Board v. Doyle,* the United States Supreme Court established a two part burden-shifting analysis for evaluating public employees' First Amendment claims. 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In order to assert a colorable claim of political discrimination, the plaintiff bears the initial burden of showing that his political affiliation was a "substantial or motivating" factor behind the challenged employment decision. *Id.* Once the plaintiff establishes the initial burden, the burden shifts to the defendant to show that he would have made the same employment decision despite the plaintiff's protected conduct. *Id.* When the defendant proffers a nondiscriminatory reason for the adverse employment action, the plaintiff may rebut the defendant's reason "by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 78 (1st Cir.2000).

Under *Mt. Healthy,* the defendant in a political discrimination case bears the burden of persuading the factfinder that his reason for the adverse employment action is credible. *Id.* at 78. Thus, "once the burden of persuasion shifts to the defendant-employer, the plaintiff-employee will prevail unless the factfinder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 67 (1st cir.1993).

### 2. *Section 1983 First Amendment Claim*

The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions. *See Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000); *see also Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

Defendant Alejandro argues that Plaintiff Vélez has not proven that Defendant Alejandro's motive for the alleged adverse employment action was political. *Docket Document No. 28.* To show that Defendant Alejandro's actions were based on political affiliation, Plaintiff Vélez has proffered the following evidence: (1) Defendant Alejandro reduced her work duties; (2) Vázquez, a PDP member, took over her duties; (3) Island's testimony that Defendant Alejandro said Plaintiff Vélez is not a person of trust to the current administration; (4) Luis Rodríguez's testimony that Plaintiff Vélez was not a person of Defendant Alejandro's trust; and (5) Defendant Guzmán's testimony that Defendant Alejandro had created a hostile work environment. *Docket Document No. 45.* Such evidence is sufficient to establish a prima facie case of political discrimination. *See Acevedo–Garcia v. Vera–Monroig,* 30 F.Supp.2d 141, 153 (D.P.R.1998) (finding that replacement by members of opposing political party and reduction in job functions were indicative of political motive).

Defendant Alejandro also maintains that Plaintiff Vélez has not shown that her work situation is "unreasonably inferior to the norm." *Docket Document No. 28.* Plaintiff Vélez has proffered evidence that prior to the alleged impermissible employment action, her duties included receiving phone calls, working with the typewriter, attending to the public, coordinating the interagency coordinators' and the zone's

local director's meetings, filing, preparing monthly reports, carrying out the agenda, coordinating emergency calls received through 911, receiving the mail, and collaborating with the radio operator. *Docket Document No. 45, Exhs. 1, 4.* Plaintiff Vélez alleges that Defendant Alejandro reduced her work duties to include only filing and operating the switchboard. *Docket Document No. 45, Exhs. 1, 7.*

In *Rutan v. Republican Party of Illinois,* the United States Supreme Court held that discharges, promotions, transfers, and recalls based on political affiliation are impermissible infringements on public employees' First Amendment rights. 497 U.S. 62, 74, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Prior to the Supreme Court's ruling, the First Circuit established the "unreasonably inferior" doctrine, which states that "the First Amendment's proscription of patronage dismissals encompasses situations in which a government employer's actions fall short of discharge but nonetheless result in an altered work situation 'unreasonably inferior to the norm' for the position in question." *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1218 (1st Cir.1989). Courts in the First Circuit continue to rely on *Agosto–de–Feliciano v. Aponte–Roque* in deciding political discrimination cases. *See Acosta–Orozco v. Rodriguez de Rivera,* 132 F.3d 97, 101 n. 5 (1st Cir.1997) ("The 'unreasonably inferior' doctrine of *Agosto–de–Feliciano* was expressly limited to complaints of discrimination short of actual demotion.").

Under *Agosto–de–Feliciano v. Aponte–Roque,* reduction in work duties may constitute an "unreasonably inferior" work situation. 889 F.2d at 1209. "An employee who previously had predominantly exciting and responsible work and who was left with only a few routine and technical assignments could be found to meet the standard so long as his prior duties reflected the usual nature of his position rather than his prior high status as a member of the then-prevailing party." *Id.* Here, there is no evidence showing that Plaintiff Vélez' previous work duties were a result of her NPP affiliation, or that Defendant Alejandro's alleged personnel action suggested a return to Plaintiff Vélez' actual work duties. On the contrary, there is evidence that Plaintiff Vélez' work duties were reduced to filing and operating the switchboard. *Docket Document No. 45.* As such, there is sufficient evidence indicating that Plaintiff Vélez' work situation is "unreasonably inferior to the norm."

Because Plaintiff Vélez has met the § 1983 prima facie case, the burden is on Defendant Alejandro to show that the alleged employment action would have occurred despite Plaintiff Vélez' political affiliation. To rebut the presumption of a First Amendment violation, Defendant Alejandro alleges that Plaintiff Vélez: (1) had a reputation of being a gossiper, which is why he did not trust her; (2) was constantly "trying to tell [Defendant Alejandro] how to do his job;" (3) attributed Defendant Alejandro's actions due to his "volatile" character, not to political discrimination, and (4) gave away Defendant Alejandro's cellular phone number without authorization. *Docket Document No. 28.* Thus, Defendant Alejandro argues that the alleged adverse employment action was justified. *Id.* Plaintiff Vélez counters that Defendant Alejandro has proffered no evidence supporting such contentions. We agree. Defendant Alejandro's allegations are unsupported by the record and, accordingly, are insufficient to create an appropriate *Mt. Healthy* defense.

Finally, Defendant Alejandro argues that Plaintiff Vélez has failed to establish a constructive discharge prima-facie case. *Docket Document No. 28.* Because Plaintiff Vélez maintains that she is not alleging

constructive discharge, we need not evaluate Defendant Alejandro's argument. *Docket Document No. 45.*

### 3. *Qualified Immunity*

Defendant Alejandro asseverates that he is entitled to qualified immunity for claims made against him in his personal capacity. *Docket Document No. 28.* Plaintiff Vélez counters that because her constitutional rights were clearly established at the time of the alleged violation, Defendant Alejandro is, therefore, not entitled to qualified immunity. *Docket Document No. 45.*

The general rule of qualified immunity is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We use a three-part test to determine whether an officer is entitled to qualified immunity: (1) whether, as alleged, a constitutional violation has occurred; (2) whether the constitutional right was clearly established at the time of the alleged violation; and (3) whether a reasonable official, similarly situated, would have known that the alleged conduct violated that right. *Rivera–Jimenez v. Pierluisi*, 362 F.3d 87, 93 (1st Cir.2004).

The test's first prong requires us to determine whether Plaintiff Vélez's allegations would constitute a constitutional violation. *Id.* Plaintiff Vélez alleges that she suffered and adverse employment action because of her affiliation to the NPP. The right to associate with a political party is a basic freedom protected by the First Amendment, and adverse employment decisions made on such grounds are unconstitutional. *Padilla–Garcia v. Guillermo–Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000).

As such, Plaintiffs' allegations meet the first part of the analysis.

Next, we determine whether Plaintiff Vélez' right to freedom of association was clearly established at the time of the alleged constitutional violation. *Rivera–Jimenez v. Pierluisi*, 362 F.3d at 93. "One tried and true way of determining whether [a] right was clearly established at the time the defendants acted, is to ask whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." *Id.* (quoting *Suboh v. Dist. Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 93 (1st Cir.2002)). Both the United States Supreme Court and the First Circuit have clearly established that adverse employment decisions made on the basis of someone's political affiliation are unconstitutional. *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 516, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–Garcia*, 212 F.3d at 74; *Roldan–Plumey v. Cerezo–Suarez*, 115 F.3d 58, 65–66 (1st Cir.1997). More specifically, the First Circuit has clearly established that politically-motivated changes in work conditions and responsibilities are unconstitutional. *See Acevedo–Garcia v. Vera–Monroig*, 204 F.3d 1, 6 (1st Cir.2000). Thus, Plaintiff Vélez's allegations satisfy the second prong of the analysis.

Finally, we decide whether a reasonable official, similarly situated, would have known that the alleged conduct violated Plaintiff Vélez's constitutional right. *Rivera–Jimenez*, 362 F.3d at 93. Here, Plaintiff Vélez has alleged facts that, if true, make out a constitutional rights claim of political discrimination. If Defendant Alejandro was motivated by political animus at the time he took the employment

actions, he knew or should have known that such actions were unconstitutional. *See Flores–Camilo v. Alvarez–Ramirez,* 283 F.Supp.2d 440, 450 (D.P.R.2003). Because of these factual disputes, we deny Defendant Alejandro's motion for qualified immunity.

## B. *Defendants Rivera and Guzmán's Motion*

Defendants Rivera and Guzmán aver that Plaintiff Vélez has: (1) failed to state a claim under 42 U.S.C. § 1983; and (2) failed to demonstrate that Defendants Rivera and Guzmán were personally involved in the violation so as to make them liable under respondeat superior. Finally, Defendant Rivera and Guzmán claim they are nonetheless cloaked by qualified immunity from Plaintiff's claims for monetary damages.

### 1. *First Amendment*

Defendants Rivera and Guzmán argue that Plaintiff Vélez failed to state a First Amendment claim against them because they were not personally involved in the alleged actions. *Docket Document No. 36.* Additionally, Defendants Rivera and Guzmán, as supervisors [2] at SEMADA, maintain that respondeat superior, the only basis on which Plaintiff Vélez may rely, does not allow for liability in cases such as this where a plaintiff alleges a constitutional deprivation. *Id.* Plaintiff Vélez counters that Defendants Rivera and Guzmán were personally involved in the alleged discrimination because they failed to properly address the situation in time and that respondeat superior is appropriate when the supervisor's conduct constitutes a "reckless or callous indifference to the constitu-

tional rights of others." *Docket Document No. 45.*

Section 1983 liability "may not be predicated upon a theory of respondeat superior," *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 49 (1st Cir.1999), unless a plaintiff can show that the "supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others." *Id.* at 49 (quoting *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989)); *see also Herrera v. Davila,* 272 F.Supp.2d 154, 162 (D.P.R. 2003). To demonstrate deliberate indifference, a plaintiff must show: (1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) defendant's failure to take easily available measures to address the risk. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998), *cert. denied,* 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999).

The supervisor need not have actual knowledge of the supervisee's unconstitutional conduct. " *Barreto–Rivera v. Medina–Vargas,* 168 F.3d at 49." Instead, a supervisor may be liable "for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." *Id.* (quoting *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994)). Additionally, the causal link may be established where "there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).

2. A supervisor is "defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior," but may nonetheless be liable under § 1983 for formulating a policy or engaging in conduct that leads to a civil rights violation committed by another. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6 (1st Cir.1998).

Here, Defendants Guzmán and Rivera proffer as evidence letters showing that Plaintiff Vélez expressed having a problem with Defendant Alejandro. *Docket Document No. 47, Exhs. 5, 6.* They argue, however, that nowhere in these letters does Plaintiff Vélez indicate that her conflict with Defendant Alejandro was caused by their differing political views. *Docket Document No. 36.* Plaintiff Vélez maintains that Defendants Guzmán and Rivera acted recklessly nonetheless because, having found that she was the victim of harassment in the workplace, they failed to remedy the situation until after she filed the complaint. *Docket Document No. 45.*

Although Plaintiff Vélez' letters to Defendant Rivera do not mention that the conflict was due to differing political opinions, Defendant Guzmán's testimony indicates that he may have had additional knowledge regarding the situation and that it may have been based on political tensions. *Docket Document No. 45, Exh. 6.* Additionally, Defendant Guzmán testified that the investigation resulted in a finding of a hostile work environment. *Id.* Further, the record indicates that Plaintiff Vélez first complained of the situation as early as January 31, 2001. *Docket Document No. 47, Exh. 5.* Defendant Alejandro was not removed from the Humacao zone until August 7, 2002, more than a month after Plaintiff Vélez filed the complaint on July 3, 2002. *Docket Document No. 47, Exh. 3.* These facts raise a question of fact as to whether Defendants Guzmán and Rivera acted properly when Plaintiff Vélez notified them of the problem. Thus, dismissal of the complaint is inappropriate at this stage.

### 2. Due Process

Plaintiff Vélez pleads a violation of her due process rights with respect to the relevant job actions. *Docket Document No. 1.* The due process clause of the Four-teenth Amendment provides that no state shall deprive a person of life, liberty, or property without constitutionally adequate procedures. *See Cotnoir v. Univ. of Me. Sys.,* 35 F.3d 6, 10 (1st Cir.1994) (internal citation omitted). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem form an independent source such as state law." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49 (1st Cir.1990). In Puerto Rico, "career" employees have a property interest in continued employment and can only be fired for good cause. *Zayas Rodriguez,* 748 F.Supp. at 55; 3 L.P.R.A. § 1336(4); 21 L.P.R.A. § 4560.

To state an actionable procedural due process claim under § 1983, a plaintiff must (1) allege facts that show that the plaintiff has a property interest, as defined by state law, and (2) that the conduct complained of, committed under color of state law, has deprived the plaintiff of that property interest without constitutionally adequate procedures. *PFZ Props. v. Rodriguez,* 928 F.2d 28, 30 (1st Cir.1991).

Defendants Rivera and Guzmán concede that Plaintiff Vélez is a career employee and that, as such, she has a property interest in her position. However, Plaintiff Vélez does not allege how Defendants Rivera and Guzmán's actions impinged those rights. Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from independent sources, such as state law." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 536, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In Puerto Rico, the law governing transfers of civil service employees, 3 L.P.R.A. § 1334,

gives employees a right not to be transferred to a different rank without employing procedural safeguards. Here, however, Plaintiff stayed at her same rank and salary. We are left only to guess which acts or omissions Defendants may have committed to deprive Plaintiff of the process to which she was due. Plaintiff Vélez' due process claims must therefore fail.

### 3. Qualified Immunity

The applicable qualified immunity standard for Defendants Guzmán and Rivera is the same as that for Defendant Alejandro. Thus, we need not re-state it here. Having decided that there are issues of fact as to whether Defendants Guzmán and Rivera acted recklessly, there are also genuine issues of fact as to whether a reasonable official in Defendants Guzmán and Rivera's situation would have known that the alleged conduct violated Plaintiff Vélez' constitutional right. Defendants Guzmán and Rivera's qualified immunity defense therefore fails at this stage of the proceedings.

### C. Puerto Rico Public Service Personnel Act and Article 1802

Defendants Rivera and Guzmán asseverate that we should decline to exercise supplemental jurisdiction over the state law claims. *Docket Document No. 36.* For the reasons stated above, Plaintiffs' First, Fifth, and Fourteenth Amendment claims are not dismissed. Accordingly, we deny Defendants' motion to dismiss the state law claims.

### IV.

#### Conclusion

In accordance with the foregoing, we **DENY** Defendant Alejandro's motion for summary judgment. *Docket Document No. 28.* We **GRANT** Defendants Rivera and Guzmán's motion for summary judgment as to Plaintiff Vélez' due process

claims, and otherwise **DENY** the motion for summary judgment. *Docket Document No. 36.*

**IT IS SO ORDERED.**