# United States Court of Appeals
## For the First Circuit

No. 11-1447

ISRAEL E. ROJAS-VELÁZQUEZ ET AL.,

Plaintiffs, Appellants,

v.

JOSÉ FIGUEROA-SANCHA ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]
[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Heriberto Güivas-Lorenzo, with whom Güivas & Quiñones Law Offices, PSC was on brief, for appellants.
Carlos Lugo-Fiol, with whom Luis R. Román-Negrón, Solicitor General, was on brief, for appellees.

March 29, 2012

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Israel Rojas-Velázquez, a Commander in the Puerto Rico Police Department (the Department), complains that the Department and several of its high-ranking officials abridged his constitutional rights by (i) stripping him of certain duties and perquisites on account of his good relations with members of an opposing political party and (ii) denying him due process.[1]  The district court dismissed the complaint for failure to state a plausible claim.  Rojas-Velázquez v. Figueroa-Sancha, No. 09-1664, 2010 WL 2838615, at *2-4 (D.P.R. July 19, 2010).  Discerning no error, we affirm.

## I.  BACKGROUND

When, as now, an appeal tests the mettle of a dismissal for failure to state a claim, we accept as true the well-pleaded facts delineated in the complaint and give the benefit of all reasonable inferences therefrom to the pleader.  See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 43 (1st Cir. 1991).

The appellant began working for the Department in 1986.  Over more than two decades, he made steady progress.  Even though he was a card-carrying member of the New Progressive Party (NPP), one of Puerto Rico's two major political parties, he received promotions during times when the NPP's main rival, the Popular Democratic Party (PDP), dominated the executive branch of the

---

[1] The appellant's wife and their conjugal partnership are named as co-plaintiffs.  Because their claims are purely derivative, we proceed as if the appellant were the only plaintiff.  Our decision is, of course, binding on all parties.

Commonwealth's government.  In 2008, he received such a promotion to the rank of Commander.  The complaint does not allege that there is any job description for the rank of Commander assigning any particular complex of duties to that rank.

We have observed before that "irony is no stranger to the law." Amanullah v. Nelson, 811 F.2d 1, 18 (1st Cir. 1987).  In yet another example of this verity, the appellant's career path became rocky when his own party, the NPP, won the 2008 general election and regained control of the government.  At that point, some departmental hierarchs began openly questioning his fealty to the NPP in light of his promotion to Commander during the previous PDP administration.  In short order, the Department's newly entrenched leadership eliminated many of his former duties, retrieved his official cellphone and departmental car, evicted him from his office, and reassigned him to the performance of mundane tasks that he viewed as beneath the dignity of his rank.[2]

The appellant interpreted these serial workplace changes as a response to his perceived ties to the PDP.  Despite the changes, however, he was neither discharged nor stripped of his rank, and he does not allege that his compensation was diminished.

On the heels of these developments, the appellant sued the Department and several of its leaders in the federal district

---

[2] The complaint is conspicuously silent as to the nature of the duties and functions that the appellant claims were eliminated under the new regime.  It is similarly unenlightening regarding the specific tasks that were subsequently assigned to him.

court.[3]  Invoking 42 U.S.C. § 1983, he alleged that the defendants had violated his First and Fourteenth Amendment rights by (i) taking adverse employment actions against him based on political animus and (ii) depriving him of a property interest in the functions of his job without due process.  He added pendent claims under local law.

The defendants moved to dismiss the complaint.  See Fed. R. Civ. P. 12(b)(6).  The district court (Pieras, J.) dismissed the section 1983 claims on the ground that the appellant had failed to show that the alleged adverse employment actions were either reprisals for engaging in constitutionally protected activity or deprivations of due process.  Rojas-Velázquez, 2010 WL 2838615, at *2-3.  It then declined to exercise supplemental jurisdiction over the local-law claims and dismissed them without prejudice.  Id. at *3; see 28 U.S.C. § 1367(c)(3).  After the appellant moved unsuccessfully to alter or amend the judgment,[4] see Fed. R. Civ. P. 59(e), he filed a notice of appeal.

---

[3] The individuals named in the complaint, all of whom were sued in both their personal and official capacities, include José Figueroa-Sancha (the superintendent of the Department), Antonio Rivera-Estela (the director of the Department's Arecibo region), and Deborah M. Vega (the Department's human resources director).

[4] Sadly, Judge Pieras's illness rendered him unable to complete the handling of the case.  Judge Fusté stepped into the breach and summarily denied the Rule 59(e) motion.

-4-

## II.  ANALYSIS

At the analytic threshold, we pause to iron out a jurisdictional wrinkle.  We then proceed to consider each component of the appellant's asseverational array.

### A.  <u>Appellate Jurisdiction</u>.

In the notice of appeal, the appellant listed only the denial of his Rule 59(e) motion.  In his brief on appeal, however, he assails the propriety of the underlying dismissal.  This mismatch is potentially significant because the jurisdiction of the court of appeals normally is limited to review of orders and judgments specifically described in the notice of appeal.  <u>See</u> <u>Constructora Andrade Gutiérrez, S.A.</u> v. <u>Am. Int'l Ins. Co.</u>, 467 F.3d 38, 43-44 (1st Cir. 2006); <u>Shelby</u> v. <u>Superformance Int'l, Inc.</u>, 435 F.3d 42, 45 (1st Cir. 2006); <u>see</u> <u>also</u> Fed. R. App. P. 3(c)(1)(B).

Here, however, the jurisdictional problem is more apparent than real.  This case falls within an exception to the general rule.  When "the propriety of denying reconsideration is inextricably intertwined with the correctness of the original order," the appellee is perforce alerted to the fact that listing of the former in the notice of appeal will entail testing the cogency of the latter.  <u>Alstom Caribe, Inc.</u> v. <u>Geo. P. Reintjes Co.</u>, 484 F.3d 106, 112 (1st Cir. 2007).  In such a situation, enumerating the denial of reconsideration in the notice of appeal establishes appellate jurisdiction over both the underlying order

-5-

and the order denying reconsideration.  See id.  So it is here: the notice of appeal listed the order denying reconsideration and, thus, adequately apprised the defendants that the dismissal itself would be contested on appeal.  We therefore have jurisdiction to review the appellant's challenge to the order of dismissal.

## B.  Section 1983 Claims.

We review an order of dismissal for failure to state a claim de novo.  McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006).  In undertaking this chore, we accept as true all well-pleaded factual allegations limned in the complaint and cede all reasonable inferences therefrom in the pleader's favor.  Bergemann v. R.I. Dep't of Envtl. Mgmt., 665 F.3d 336, 339 (1st Cir. 2011).

To make out a viable cause of action under section 1983, a plaintiff must allege that the defendants, while acting under color of state law, deprived him of rights secured by the Constitution or federal law.  Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011).  For this purpose, Puerto Rico is the functional equivalent of a state, Pagán v. Calderón, 448 F.3d 16, 31 n.6 (1st Cir. 2006), and the present defendants do not dispute that they were acting under color of Puerto Rico law.  The only question, then, is whether their actions impermissibly deprived the appellant of any federally assured right.

The appellant advances two theories as to how his constitutional rights were transgressed.  We examine these theories separately.

-6-

1.  **Political Discrimination**.  The appellant's flagship theory implicates the First Amendment.  In this regard, he notes that the First Amendment protects non-policymaking public employees from suffering adverse employment consequences in retaliation for engaging in political activity.  See, e.g., Rutan v. Repub. Party of Ill., 497 U.S. 62, 69 (1990); Branti v. Finkel, 445 U.S. 507, 516-17 (1980).  Relying on this principle, he argues that the defendants impugned his First Amendment rights by trimming his duties and removing certain of his perquisites (e.g., a cellphone and a departmental motor vehicle) based on political animus.

As a general matter, the appellant is correct that non-policymaking public employees are protected by the First Amendment against adverse employment actions taken in response to their political activities and affiliations.  Without such protection, those employees might be chilled from engaging in core First Amendment activities, such as joining a political party or expressing their views on public issues; or they may feel compelled to support policies and candidates that they find odious.  See Elrod v. Burns, 427 U.S. 347, 355-57 (1976) (plurality op.); see also Rutan, 497 U.S. at 69 ("[C]onditioning employment on political activity pressures employees to pledge political allegiance to a party with which they prefer not to associate, to work for the election of political candidates they do not support, and to contribute money to be used to further policies with which they do not agree.").

In this context, something short of outright termination can comprise an adverse employment action. See Rutan, 497 U.S. at 74-76. If a public employer imposes unreasonably inferior working conditions on a non-policymaking employee on account of the latter's engagement in constitutionally protected activity, that imposition can amount to an adverse employment action (and, thus, support a claim of constitutional breach). See Carrasquillo v. Puerto Rico ex rel. Justice Dep't, 494 F.3d 1, 4 (1st Cir. 2007); Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217-18 (1st Cir. 1989) (en banc).

But this is not to say that the First Amendment protects against any and all adverse employment actions. It does not. The prophylaxis of the First Amendment operates to shield public employees from adverse employment actions only to the extent that those actions result from their engagement in constitutionally protected activities. See Barry v. Moran, 661 F.3d 696, 704 (1st Cir. 2011); González-de-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004); see also Garcetti v. Ceballos, 547 U.S. 410, 420 (2006) (holding that "the First Amendment . . . does not empower [public workers] to constitutionalize the employee grievance" (internal quotation marks omitted)). It follows that in order to make out a section 1983 claim under a political discrimination theory, a public employee must show that "his conduct was constitutionally protected, and that this conduct was a 'substantial factor' — or . . . a 'motivating factor'" with respect

to the negative employment decision.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see Carrasquillo, 494 F.3d at 4 ("To prevail on a claim of political discrimination, a public employee must at a minimum show that she engaged in constitutionally-protected conduct and that this conduct was a substantial factor in the adverse employment decision.").

Applying these tenets, we agree with the district court that the appellant has not alleged a plausible claim of political discrimination.  Even assuming, for argument's sake, that the curtailment of his job functions and perquisites might qualify as an adverse employment action, the appellant has not plausibly alleged that his participation in constitutionally protected activities drove that adverse action.  We explain briefly.

The appellant alleges that the defendants' misperception of his political leanings played a decisive role in his plunge into obscurity.  He explains that this misperception came about as a result of his professional advancement during PDP administrations. The rub is that professional success is not an activity that the First Amendment protects.  This is a matter of considerable import: where, as here, a plaintiff fails to tie the alleged adverse employment action to some protected activity, a political discrimination claim cannot prosper.  See, e.g., Barry, 661 F.3d at 708 (dismissing political discrimination claim where plaintiff alleged that cronyism led to adverse employment action because cronyism does not implicate First Amendment rights).

-9-

To be sure, political affiliation itself is a constitutionally protected activity. See, e.g., Gomez v. Rivera Rodriguez, 344 F.3d 103, 109-10 (1st Cir. 2003). But the appellant has not alleged that he is being discriminated against because of either his party preference or any other affiliation of a political nature. He — like the defendants — is a member of the NPP, and he does not in any way suggest that his party membership is at the root of his troubles.[5]

This would be a different case if the defendants' misperception of the appellant's political leanings arose from protected activity or affiliation. See, e.g., Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir. 2008) (upholding political discrimination claim where plaintiff alleged that his protected decision to remain neutral in recall election created a perception regarding his political views and led to politically motivated reprisals). Here, however, the appellant has not averred that the defendants' misperception regarding his political loyalty (or lack thereof) was based on his membership in the PDP, his support for PDP candidates, his advocacy of pro-PDP policies, or any other protected activity. Instead, he frankly admits that he is a member of the NPP and alleges in substance that he has been penalized for

_____

[5] When factions exist within a single political party, there may be situations in which a political discrimination claim can be brought by a party member against other party members who belong to a different faction. See Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 73-76 (1st Cir. 2000). Here, the appellant has made no effort to bring his case within this category.

his successful professional relationships with members of prior PDP administrations. This may be an undeserved penalty, but discrimination based on non-political associations does not implicate the First Amendment. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 57 (1st Cir. 1990) (dismissing political discrimination claim premised on the plaintiff's personal relationship with an official with whom the defendants had political differences). In other words, "the first amendment does not protect against all deprivations arising out of an act of association unless the act itself — say, joining a church or a political party, speaking out on matters of public interest, advocacy of reform — falls within the scope of activities eligible for inclusion within the constitutional tent." Id. The appellant's adroit networking with PDP leaders is an act of association that falls outside of this tent.

**2. Due Process.** The appellant has a second section 1983 claim. He heralds the Fourteenth Amendment's prohibition against a state depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Building on this foundation, he asserts that he had a cognizable property interest in his official job functions and that the defendants deprived him of that interest without any process at all.[6]

---

[6] In his due process claim, the appellant focuses exclusively on the curtailment of his job functions. He does not assert that

-11-

Inasmuch as this is a procedural due process claim, it can succeed only if the appellant has plausibly alleged a constitutionally protected property interest in the functions of his job. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-72 (1972). Determining whether the appellant had such an interest requires us to look to local law. See Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 319 (1st Cir. 1989) (en banc) ("The sufficiency of a claim of entitlement to a property interest in public employment must be measured by, and decided with reference to, local law."). On this point, Puerto Rico law is pellucid: a public employee may have a property interest in his continued employment, see Costa-Urena v. Segarra, 590 F.3d 18, 27 (1st Cir. 2009), but not in the particular functions of his job, see Soto-Padró v. Pub. Bldgs. Auth., ___ F.3d ___, ___ (1st Cir. 2012) [No. 10-2413, slip op. at 15-16]; Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005).

The appellant has not alleged that he was terminated, that he was demoted from the rank of Commander, or that his compensation was diminished. All that he alleges is the loss of job-related duties, never specifically described, in which Puerto Rico law cedes him no constitutionally protected property interest. Absent a deprivation of a constitutionally protected property

_____

he had a constitutionally protected property interest in the paraphernalia that has been taken away from him (e.g., the cellphone and the departmental motor vehicle).

interest, the appellant has not stated a plausible due process claim.

In an attempt to distract us from this obvious conclusion, the appellant argues that P.R. Laws Ann. tit. 25, § 3111 and a section of the Department's personnel handbook grant him a cognizable property interest in the functions of his position. These sources cannot support the weight that the appellant places upon them.

The statutory provision says nothing about job functions.[7] Accordingly, it sheds no light on the existence vel non of any property interest in such functions.

---

[7] Subsection (a) of the statute prescribes a compensation schedule for the various ranks in the Department. The remainder of the provision reads:

> (b) The Puerto Rico Police shall be constituted into a unified organizational system in which the Superintendent determines the best use of the human resources available as provided in § 3105(d) of this title.
>
> (c) The creation of any rank, classification or specialized classification of the members of the Police, other than those provided in §§ 3101-3138 of this title, is hereby prohibited.
>
> (d) No member of the Force who has not belonged to it for a term of fifteen (15) years or more shall be considered for promotion to the rank of Inspector, Major, Lieutenant Colonel or Colonel.
>
> (e) All academic requirements established herein shall be applicable as provided in § 3137(c) of this title.

P.R. Laws Ann. tit. 25, § 3111.

The reference to the personnel handbook is even less helpful to the appellant. He has not supplied either the district court or this court with a copy of the handbook, quoted its pertinent language, or developed any coherent argument explaining how the handbook creates a cognizable property interest. Consequently, any argument predicated on the handbook has been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## C. **Pendent Claims**.

The district court's dismissal without prejudice of the claims brought under Puerto Rico law need not detain us. Because the only federal claims in this suit were properly dismissed, see supra Part II(B), the court's decision not to exercise supplemental jurisdiction over the pendent claims cannot seriously be questioned. See Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 191 (1st Cir. 2011); Martinez v. Colon, 54 F.3d 980, 990-91 & n.12 (1st Cir. 1995).

## D. **Rule 59(e)**.

The final matter is the appellant's claim that the district court erred in refusing to alter or amend the order of dismissal. We review a denial of a motion to alter or amend a judgment for abuse of discretion. Negrón-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008). We descry none here.

As we already have explained, the court below did not commit legal error when it dismissed the section 1983 claims. See

-14-

supra Part II(B).  A fortiori, it did not abuse its discretion by declining to revisit the order of dismissal.  See Hannon v. Beard, 645 F.3d 45, 51 n.5 (1st Cir. 2011) (stating that "[a] trial court acts well within its discretion in declining to reconsider a legally correct order").

## III.  CONCLUSION

We need go no further.  Both of the appellant's theories of constitutional injury fail.  Because he has not plausibly alleged that the defendants deprived him of any federally assured right, his section 1983 claims were correctly dismissed.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In the aftermath of that ruling, his pendent claims were also appropriately dismissed, and his Rule 59(e) motion was properly denied.

**Affirmed**.