# United States Court of Appeals
## For the First Circuit

No. 13-1676

ROSAURA BUILDING CORP.,

Plaintiff, Appellant,

v.

MUNICIPALITY OF MAYAGÜEZ, ET AL.,

Defendant, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Torruella, Dyk,[*] and Thompson,
Circuit Judges.

Israel Roldán-González, for appellant.
Eliezer A. Aldarondo-López, with whom Eliezer A. Aldarondo-Ortiz, Claudio Aliff-Ortiz and Aldarondo & López-Bras, were on brief for appellees.

February 4, 2015

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.** Rosaura Building Corp. ("Rosaura") brought this § 1983 claim based on an alleged deprivation of its First Amendment constitutional rights by the Municipality of Mayagüez, Puerto Rico, and its mayor, the Honorable José G. Rodríguez ("Rodríguez" or the "Mayor"), after Rodríguez denied the corporation a government contract. Rosaura fails to allege what protected activity -- if any -- it exercised and was a substantial motivating factor in bringing about the Mayor's purported retaliation, essential elements of its cause of action, and thus we affirm the summary judgment granted in favor of the Defendants.

## I. <u>Background</u>

We review the facts in the light most favorable to the appellant, the party opposing summary judgment. <u>Agusty-Reyes</u> v. <u>Dep't of Educ. of P.R.</u>, 601 F.3d 45, 48 (1st Cir. 2010).

### A. Factual Background

Rosaura is a family-owned corporation whose principal place of business and sole asset is a commercial property located at 107 Post Street South in the city of Mayagüez. During the summer of 2010, several officials from the city-operated Head Start program ("Head Start" or the "Program"),[1] including its director,

---

[1] Head Start programs support the development of low-income children from birth to age 5 to promote their school readiness. The programs provide education, health, nutrition, social, and other services to children and their families. <u>See</u> 42 U.S.C. § 9831.

Ms. Elba I. Falto de Román, and the facilities maintenance supervisor, examined the property to determine whether it was suitable for Head Start classrooms. Finding that it was appropriate for their needs, the city officials recommended the lease and asked other employees to visit the property, including the program's sub-director and the city's supervisors for education, nutrition, and health. These officials also unanimously recommended the building over several others examined, because it was the most accessible and it complied with all the needs of the Program.

Falto de Román met with representatives from Rosaura and negotiated the terms of the proposed lease. Then, she instructed them to contact Ms. Ana Martínez to help them with filing a necessary contract petition form. Martínez forwarded the contract petition to the Head Start Program Finance Unit, and to officials in the city's Department of Finance. All of them certified that the Program and the city had the resources necessary to comply with the proposed contractual terms. Following the city's usual bureaucratic process, Martínez sent the contract to the Contracts Committee, an office directed by the Mayor's brother, which also recommended that the contract petition be approved. With this approval, Martínez told representatives from Rosaura that everything was "ready" for the contract to be executed, and sent the draft contract to the city's Legal Division. Everything seemed

to be on track until the Legal Division unexpectedly replied that there was a problem and the contract could not be signed.

Falto de Román was surprised by the rejection. She believed that Rosaura's building was the only one available that complied with the Program's requirements and that Rosaura had made the best offer during the search process. Moreover, the Program was time-pressed to open the much-needed additional classrooms. Shortly thereafter, Falto de Román received a letter from the Mayor stating that all of the Program's contracts would need to have his approval -- a departure from prior practice. She acknowledged the letter in writing and received a note in response from the Mayor saying "[t]hat lease does not proceed." Falto de Román notified representatives from Rosaura that the contract had not been approved by the Mayor. Instead, the Program participants were placed in provisional centers belonging to an alleged political supporter of the Mayor.

Aggrieved by this situation, Mr. Néstor Pagán-Vélez, one of the shareholders of Rosaura, asked the Mayor in person about his rejection of the contract. He claimed in his deposition that the Mayor responded that he "[would] not sign contracts with [. . .] with enemies of mine, which is what . . . you already know, which is what your brother and your nephew are." Pagán-Vélez, interpreted this as a reference to his brother, Mr. Víctor Pagán-Vélez, and his niece, Ms. Mignonia Acosta-Pagán. These two had

been members of the Municipal Legislature of Mayagüez, prior to the 2008 elections, and were ousted by the Mayor after a scuffle within the local leadership of the Popular Democratic Party ("PDP").[2]

## B. Procedural History

Rosaura brought a civil rights claim for equitable relief and damages pursuant to 42 U.S.C. § 1983 against the Mayor, in his official and personal capacities, and the municipal government (the "Defendants"), alleging initially that it had been retaliated against because of the political affiliation of its shareholders.[3] It argued perfunctorily that the actions taken by the Defendants were "solely motivated by the plaintiff's political beliefs" since Rosaura's "shareholders are identified with a faction within the [PDP] that challenged the leadership of defendant José Guillermo Rodríguez, within the same political party." It claimed in a brief, conclusory manner that these actions violated its constitutional rights under the First, Fifth, and Fourteenth Amendments. Without further explanation, the complaint requested

---

[2]  The Mayor later called Falto de Román and questioned her communications with the shareholders of Rosaura and her explanation as to why their contract was not approved. She told him what her explanation to the shareholders had been: that Rodríguez had rejected it. The Mayor furiously replied that she had to be loyal to him. She was then terminated. Falto de Román also sued the Mayor, and her case remains pending. See Falto de Román v. Mun. Gov't of Mayagüez, et al., 2014 WL 460865 (D.P.R. Feb. 5, 2014).

[3]  Víctor Pagán-Vélez and Mignonia Acosta-Pagán are not shareholders of Rosaura. Nothing in the record suggests that they are affiliated with the corporation in any way.

injunctive relief ordering the municipality to sign the lease contract, prohibiting Defendants from further acts of political discrimination, and monetary damages.

The Defendants filed a motion to dismiss that was granted in part as to the municipal government by way of a docket order, on the grounds that the complaint failed to plead a scintilla of facts that could lead to liability by the municipal government pursuant to <u>Monell</u> v. <u>Department of Social Services</u>, 436 U.S. 658, 695-701 (1978). No corresponding judgment was issued with regard to this docket order.[4] Over a year-and-a-half later, Defendants requested that the district court enter a judgment dismissing the claims against the Mayor in his personal capacity since there was no allegation in the complaint against him in his personal capacity, and he had only been served in his official capacity. The district court denied the request for dismissal because the Defendants had also filed a motion for summary judgment on the same day, together with a memorandum of law in its support, alleging that there is no cognizable claim for First Amendment retaliation. The district court opted for considering the summary judgment motion instead.

After reviewing the record, including the motion to dismiss that had been granted by the docket order, the district court entered the corresponding judgment dismissing the claims as

---

[4] The parties subsequently consented for the case to be decided by a magistrate judge. We refer to the magistrate judge and the district court as the "district court" for simplicity.

-6-

to the municipal government. It agreed that the complaint contained no allegations against the municipality and stressed that Rosaura never requested leave to amend the complaint to add allegations regarding that defendant. It also dismissed the claims against the Mayor in his personal capacity because he was never served with process as such. Finally, the district court granted summary judgment in favor of the Mayor on the claims remaining against him in his official capacity. Regarding the First Amendment claim, the district court found that this Court has never extended the First Amendment anti-retaliation protection of government contractors, recognized by the Supreme Court in Board of County Commissioners v. Umbehr, to first-time bidders of government contracts. 518 U.S. 668, 686 (1996). That is, the Supreme Court and this Court have not extended the protections recognized by Umbehr for existing government contractors to parties that do not have existing contractual relationships with a state actor.

The district court noted that it was uncontested that Rosaura never had a contract with the city, an important fact for the instant appeal as explained below. It concluded that "upon absence of First Circuit Court precedent recognizing an independent contractor without prior business relationship to raise First Amendment claims, and the split among other circuits on the issue," it would deny the cause of action. Thus, it dismissed the First

Amendment claim. It also dismissed the equal protection claim, though without any analysis. This appeal by Rosaura ensued.

## II. Discussion

We review a district court's grant of summary judgment de novo, drawing all inferences in favor of the non-movant. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013). Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported summary judgment motion." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013)(quoting Rogan v. City of Bos., 267 F.3d 24, 27 (1st Cir. 2001)(internal quotation marks omitted)).

The de novo standard of review does not limit this Court to the district court's rationale, as we may affirm on "any ground revealed by the record." Houlton Citizens Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

## A. Dismissal of Claims Against the Municipal Government

In its appeal, Rosaura alleges that the district court erred in dismissing the claims against the municipal government

under Monell, after it found that Rosaura failed to plead a scintilla of facts against that government entity. Rosaura argues that a claim against the Mayor in this context binds the municipality as well. In their brief, the Defendants appear to concede Rosaura's contention based on Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005). According to the Defendants, should this Court reverse the determination on the merits, the Mayor would still be a defendant in his official capacity, and joining the municipal government would result in a duplicative claim. Although this is not the reasoning followed by the district court, it presents an alternate basis to affirm the dismissal granted as to the municipal government. We agree.

A suit against a public official in his official capacity is a suit against the government entity. Suprenant, 424 F.3d at 19; Wood v. Hancock Cnty. Sheriff's Dep't, 354 F.3d 57, 58 n.1 (1st Cir. 2003). The reason for this rule is that "it is when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694; see also Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken

repeatedly."). We have also explained that a municipal government is liable when it has caused the deprivation of a constitutional right through an official policy or custom. See Rodríquez v. Municipality of San Juan, 659 F.3d 168, 181 (1st Cir. 2011). "One way of establishing a policy or custom is by showing that 'a person with final policy making authority' caused the supposed constitutional injury." Id. (quoting Welch v. Ciampa, 542 F.3d 927, 941-42 (1st Cir. 2008)). Liability may be imposed on a municipality for a single decision by a final policy maker. Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 770 (1st Cir. 2010).

Mayors in Puerto Rico are the government officials ultimately responsible for employment decisions of the municipality. See id. (quoting Rodríguez-García v. Municipality of Caguas, 495 F.3d 1, 12 (1st Cir. 2007)); Acevedo-García v. Monroig, 351 F.3d 547, 553 n.1 (1st Cir. 2003) (noting that under Puerto Rico law, mayors of municipalities have the power to appoint and remove municipal officials and employees, and thus a mayor's "employment decisions ipso facto constituted the official policy of the municipality" (internal quotation marks and citation omitted)). Because Umbehr simply extends employment protections to contractors, the same analysis applicable to employment decisions governs in this case. See Umbehr, 518 U.S. at 674.

In the instant appeal, the Defendants expressly concede that it was exclusively the Mayor's decision to deny the contract that caused Rosaura's purported constitutional injury. Based on the foregoing, the Defendants are correct that there is no practical effect in dismissing the claims against the municipal government. Therefore, the district court did not err in granting the dismissal of the claims against the Municipality of Mayagüez.

**B. The First Amendment Claim**

**1. The "Newly Discovered Facts"**

There is one other procedural wrinkle that we must iron out before reaching the merits of Rosaura's First Amendment claim. One week before oral arguments, Rosaura filed an "Urgent Motion Informing New Facts That Might Affect This Appeal." In that motion, Rosaura claimed -- for the first time -- that its shareholders had just informed its lawyer that they "had a previous contract with the Municipality of Mayaguez." It further requested that we consider this as a matter of fact when resolving the case, or, in the alternative, that we remand the case to the district court so that it can reconsider its dismissal. Rosaura claims that this new fact makes Umbehr dispositive of the instant controversy and that it automatically possesses a cause of action.

In Umbehr, a contractor who was an outspoken critic of a county board "spoke at the Board's meetings, and wrote critical letters and editorials in local newspapers regarding the County's

landfill user rates, the cost of obtaining official documents from the County, alleged violations by the Board of the Kansas Open Meetings Act, [and] the County's alleged mismanagement of taxpayer's money," among other subjects of public interest. Umbehr, 518 U.S. at 671. The Supreme Court faced the question of whether this contractor was entitled to First Amendment protection against retaliation over its contract for hauling trash. Id. at 672-73. The Court held that, based on the similarities between independent contractors and employees, it was appropriate to follow the precedents that protected government employees from retaliation for their public discourse. Id. at 674 ("The similarities between government employees and government contractors with respect to this issue are obvious."). After analyzing the justifications stated by the government defendants, the Umbehr Court concluded that the government may terminate contracts so long as it does not do so in retaliation for protected activity, in the same manner that government employees' claims for retaliation are subject to the analysis established in Pickering v. Board of Education of Township High School District 205, 391 U.S. 563 (1968). Id. at 678.

    The problem with Umbehr, as applied to the instant case, is that it expressly rejected answering whether this protection also extends to first-time bidders for government contracts. Id. at 685 ("Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not

address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship."). Thus, Rosaura would rather be in the same position as the plaintiff in Umbehr, who had an ongoing contractual relationship.

At first glance, we should not even take this issue into consideration since Rosaura argues nothing in its motion suggesting that the contract was in effect at the time of the alleged retaliation, or that any legal agreement was breached in any way as a result of the alleged retaliatory conduct. Yet, even assuming that it was, this motion with newly discovered facts does not help Rosaura for several reasons. Rosaura filed its complaint on June 14, 2011. From that moment on, its only legal strategy and legal theory has been that this Court should extend the protections recognized to existing contractors in Umbehr, so that first-time bidders for government contracts like Rosaura are also protected.[5]

Time and time again we have held that arguments not advanced before the district court are waived. Emp'r Ins. Co. of Wausau v. OneBeacon Am. Ins. Co., 744 F.3d 25, 29 (1st Cir. 2014) ("'It is a virtually ironclad rule that a party may not advance for the first time on appeal either a new argument or an old argument

_____

[5] As mentioned, the case law in this Circuit has not extended Umbehr beyond cases "where [the] government retaliates against a contractor, or regular provider of services, for the exercise of rights of political association or expression of political allegiance." O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 715 (1996); García-González v. Puig-Morales, 761 F.3d 81, 92-93 (1st Cir. 2014).

-13-

that depends on a new factual predicate.'")(citing Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003)).  The only theory of the case advanced by Rosaura for over three years is that it did not have an existing contract with the municipal government. Rosaura cannot change this simply because a new theory now fits it better.  Genereux v. Raytheon Co., 754 F.3d 51, 53 (1st Cir. 2014) ("[W]hen a litigant commits to a theory of the case and sticks to that theory past the point of no return, he cannot thereafter switch to a different theory simply because it seems more attractive at the time.").

Furthermore, the procedure followed by Rosaura to inform us of the new fact and obtain its request was incorrect.  Appellate review concentrates on considering the factual record presented in the trial courts.  See, e.g., Fed. R. App. P. 10(a) (defining the record on appeal as comprising the evidence introduced in the trial court).  This is true of evidence that was available during trial. However, when evidence is discovered after the case has been adjudicated by a district court, it is to be introduced into the record through Federal Rule of Civil Procedure 60(b)(2), which outlines the procedure for vacating a judgment to address "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial. . . ."  See Fed. R. Civ. P. 60(b)(2).  For those reasons, in Puerto Rico v. SS Zoe Colocotroni, we held that parties litigating before this Court

-14-

should file a motion under Rule 60(b) to vacate a judgment directly with the district court, without seeking prior leave from the Court of Appeals. 601 F.2d 39, 41 (1st Cir. 1979). The district courts are required "to review any such motions expeditiously, within a few days of their filing. . . ." Id. at 42. Where the district court considers a motion to have merit, it issues a memorandum so that the movant may petition this Court to remand the case to the district court for the judgment to be vacated. Id.; see also United States v. 6 Fox St., 480 F.3d 38, 46 (1st Cir. 2007). Otherwise, a litigant may not request on appeal that this Court remand a case to a district court for it to consider an argument that the litigant waived before that court. Toscano v. Chandris, S.A., 934 F.2d 383, 386-87 (1st Cir. 1991) (holding that a litigant must follow Colocotroni in such scenarios).

In any event, Rosaura's attempt is likely doomed because Rule 60(c)(1) requires that motions for newly discovered evidence pursuant to Rule 60(b)(2) be brought before the district court "within a reasonable time" and "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). The judgment in this case was entered by the district court on April 30, 2013, but the urgent motion informing the newly discovered fact was not filed with us by Rosaura until July 21, 2014. Therefore, because Rosaura failed to meet the one-year limitations period available under Rule 60(b)(2), it could only have been entitled to relief from judgment

-15-

under Rule 60(b)(6), which allows a court to relieve a party from a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(c)(6). Yet, this Court's precedents disallow a movant from using this subsection to avoid the limitations period imposed in clauses one through three, including Rule 60(b)(2) for newly discovered evidence. See Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993) (explaining that "clause (6) is designed as a catchall, and a motion thereunder is only appropriate when none of the first five subsections pertain."). Thus, Rosaura cannot force its motion into clause six. Simon v. Navon, 116 F.3d 1, 5 (1st Cir. 1997) (pointing out that "were Rule 60(b)(6) to allow a second out-of-time bite at the same apple, the stringent finality-enforcing limitation period of [Rule] 60(b)(1)-(3) would be eviscerated."). Moreover, Rosaura failed to show "'extraordinary circumstances' suggesting [it] is faultless in the delay." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993).

For these reasons, we deny the motion and move on to the merits.

**2. The Merits of the First Amendment Retaliation Claim**

Rosaura requests that we reverse the district court's grant of summary judgment, arguing the district court erred in concluding that, because this Circuit has not recognized a cause of action for First Amendment retaliation against first-time

-16-

contractors, no such cause of action exists. Rosaura invites us to extend these protections to potential contractors whose business is denied, basing its plea on Oscar Renda Contracting, Inc. v. City of Lubbock, 463 F.3d 378 (5th Cir. 2006). In that case, the Fifth Circuit held that having prior contractual relationships is not a requirement for First Amendment protection of independent contractors, since this protection is analogous to the protections recognized to employees, which also extend to hiring decisions on applicants for employment with the government, pursuant to Rutan v. Republican Party of Ill., 497 U.S. 62, 79 (1990); see Oscar Renda, 463 F.3d at 380, 385.

On the other hand, the Defendants ask us to follow Barry v. Moran, 661 F.3d 696, 706 (1st Cir. 2011) (dismissing a political discrimination claim premised on personal, not political association). Defendants argue that Barry requires evidence that the association being retaliated against is political in nature and constitutionally protected, rather than simply personal. Also, they claim that pursuant to Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49 (1st Cir. 1990), a plaintiff's relationship with someone with whom the defendants had political difference does not rise to engaging in constitutionally protected activity. In the instant appeal, as Defendants explain, Rosaura's claim, rather than being premised on retaliation resulting from its engagement in protected activity, is framed upon the relationship of a third

-17-

party that is not a plaintiff -- Rosaura's shareholders -- with relatives of theirs, an association that is not political in nature. Thus, there is no factual basis to support that Rosaura, or even its shareholders, engaged in constitutionally protected activity regarding matters of public interest, or that such constitutionally protected activity was the driving cause of the alleged retaliatory response. We agree with the Defendants.

In its complaint, Rosaura pleaded a few perfunctory, conclusory statements that initially seemed to align its claim with a plain political discrimination case, by alleging briefly that the actions of the Defendants were motivated by Rosaura's political beliefs, that the its shareholder's political beliefs were known to the Defendants, and that the shareholders of Rosaura are identified with a faction within the PDP that challenged the Mayor in the past. Yet, there are no further allegations regarding those statements elsewhere in the record. Rosaura changed the story from that point on, and has stated repeatedly that the retaliation was caused by the relationship between the shareholders and their relatives, not because of the political affiliation of its shareholders. From that point on, Rosaura pleaded, argued, opposed the motion for summary judgment, and appealed framing its case exclusively as a political retaliation case that depended squarely on Umbehr. Rosaura thereby abandoned the possibility of bringing this as a discrimination claim, while instead expressly advancing

a retaliation cause of action. "[T]he settled appellate rule [is] that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 277 (1st Cir. 2014)(alteration in original)(citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). In its brief, Rosaura does not even mention those conclusory allegations it had included in its complaint.

Rosaura's allegations pertaining to the Mayor's conduct are also limited to him not signing the lease in retaliation for his prior dispute with the brother and niece of one of Rosaura's shareholder. Accordingly, we examine the instant appeal as a First Amendment retaliation case based on that non-political association on which Rosaura premised its case.

Although political discrimination and retaliation cases are intrinsically similar, and, in certain circumstances, courts evaluate the evidence in the same manner, the two causes of action are quite distinct. Mercado-Berríos v. Cancel-Alegría, 611 F.3d 18, 22 (1st Cir. 2010). Under political discrimination cases, "government officials are forbidden from taking adverse action against public employees on the basis of political affiliation or belief." Mercado-Berríos, 611 F.3d at 22 (citing Welch, 542 F.3d at 938); Rutan, 497 U.S. at 64 (1990).

-19-

Retaliation cases, on the other hand, "'call[] for a different, though related, inquiry' when a public employee's speech, rather than her political affiliation or belief, is at issue." Mercado-Berríos, 611 F.3d at 22 (quoting O'Hare Truck, 518 U.S. at 719). Thus, in analyzing this as a retaliation case, we apply the balancing test established in Pickering. See O'Hare Truck, 518 U.S. at 719.

The First Amendment guarantees the "public interest in having free and unhindered debate on matters of public importance." Pickering, 391 U.S. at 573. The government is forbidden from imposing burdens on persons that discourage or punish them from exercising protected constitutional rights. See Ramírez v. Arlequín, 477 F.3d 19, 22 (1st Cir. 2006). A government employee should not suffer reprisal from a government official for engaging in protected speech because of the possible chilling effect against the free exercise of constitutional rights. Mercado-Berríos, 611 F.3d at 25; see also Hartman v. Moore, 547 U.S. 250, 256 (2006). We have also held that, as a general matter, "claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." Centro Médico del Turabo, 406 F.3d at 9 (citing Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004)). As explained, Umbehr extended the First Amendment protections of public employee rights to private contractors. 518 U.S. at 673.

-20-

In these circumstances, to prevail on a § 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that his conduct was constitutionally protected, and (2) that this conduct was a substantial factor or a motivating factor for the defendant's retaliatory decision. Pierce, 741 F.3d at 302-03; Centro Médico del Turabo, 406 F.3d at 10; Powell, 391 F.3d at 17 (quoting Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The Supreme Court has also outlined what a plaintiff must show in order to establish that its specific conduct was constitutionally protected under the first prong. There are two particular requirements that must be met. First, a public employee must establish that she was speaking "as a citizen on a matter of public concern." Díaz-Biqio v. Santini, 652 F.3d 45, 51 (1st Cir. 2011) (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). If plaintiff's speech is not on a matter of public concern, there is no First Amendment cause of action. Id. Second, the First Amendment protection of the speech must outweigh the government's interest as an employer. Id. (citing Rivera-Jiménez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004)).

Additionally, in order to meet the motivation prong, a plaintiff must produce "sufficient direct or circumstantial evidence" that his constitutionally protected conduct was the driving factor that caused the retaliation. Id. The plaintiff's burden in establishing motivation "is more substantial than the

-21-

burden of producing prima facie evidence in, for example, the first stage of a Title VII discrimination case." Id. at n.3 (citing Guilloty Pérez v. Pierluisi, 339 F.3d 43, 56 n.11 (1st Cir. 2003)).

The pleading standard for these elements of the cause of action are also well-defined in our case law. The First Amendment does not create a constitutional revision process for every government employment decision. See Rojas-Velázquez v. Figueroa-Sancha, 676 F.3d 206, 210 (1st Cir. 2012). Therefore, it is vital for any claim to clearly present the protected activity on which it is premised. Id. at 211 ("[T]he appellant has not averred that the defendants' misperception regarding his political loyalty (or lack thereof) was based on his membership in the PDP, his support for PDP candidates, his advocacy of pro-PDP policies, or any other protected activity."). More importantly for the instant appeal, retaliation for relationships other than those which are political in nature may be "undeserved" punishment, but are nonetheless not protected by the First Amendment. Id. ("This may be an undeserved penalty, but discrimination based on non-political association does not implicate the First Amendment.").

In Correa-Martínez v. Arrillaga-Beléndez, we affirmed the dismissal of a First Amendment claim brought by a government employee alleging that his forced resignation was the result of his close relationship with another employee with whom the defendants had personal and political differences. 903 F.2d 49, 57-59 (1st

-22-

Cir. 1990) (overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004)). There, we reasoned that the plaintiff's allegations in that case did not explain how the defendants discriminated against him based on his political beliefs or advocacy of ideas regarding matters of public interest. Id. at 57. We further reasoned, "he asserts only that defendants had 'personal and political differences' with an unrelated individual [. . .] and discriminated against him (plaintiff) because of his 'close association' with [said individual]." Id. Such personal relationships with someone with whom defendants have political differences do not rise to the level of protected activity guaranteed by the Constitution. See id. ("[I]n constitutional terms, freedom of association is not to be defined unreservedly. Entry into the constitutional orbit requires more than a mere relationship."). That is, "the First Amendment does not protect against all deprivations arising out of an act of association unless the act itself -- say, joining a church or political party, speaking out on matters of public interest, advocacy of reform -- falls within the scope of [protected] activities." Id. Therefore, when a constitutional claim rests upon the political beliefs of third parties being the cause of the adverse action without more, a plaintiff fails to establish that its protected activity is the motivating factor behind defendant's actions.

Here, Rosaura acknowledged that there would be material facts in controversy requiring reversing the dismissal granted by the district court, only if we decide that it had a valid cause of action for retaliation under Umbehr. Yet, Rosaura failed to argue what protected conduct, if any, it engaged in that was a motivating factor in the Mayor's retaliation. Rosaura also failed to allege that its association to the relatives of one of its shareholders was political in nature, or related to other matters of public concern.

We note that here there is a particularly attenuated relationship between Rosaura and the parties exercising First Amendment rights (Rosaura alleged that it was denied a contract because its shareholders are related to parties exercising First Amendment rights), and there is no allegation that the denial of the contract to Rosaura was designed to or would have any material effect on the exercise of First Amendment rights by the relatives of shareholders. For those reasons, Rosaura failed to establish a colorable claim for First Amendment retaliation.

## C. The Equal Protection Claim

Rosaura claims, in the alternative, that the lease contract was ultimately granted to a political supporter of the Mayor, without submission for his written approval, as the Mayor required of Rosaura's contract at the eleventh hour. Thus, it claims that this action violated its equal protection rights. In

support of the purported unequal treatment, Rosaura simply contends, without details, that the favored contractor's property was sub-standard and did not meet Head Start requirements. Rosaura points us without much guidance to Clark v. Boscher, which held that "[a] plausible equal protection violation is established when a plaintiff shows by his or her well-pleaded facts that she was treated differently from 'others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" 514 F.3d 107, 114 (1st Cir. 2008). Even assuming that these allegations are sufficient, which we do not since we have held that Rosaura failed to establish that it exercised constitutional rights, this also is wrong on the merits.

As stated before, an equal protection claim requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013). Rosaura has failed to show any of these impermissible considerations.

Defendants correctly reply that Rosaura's equal protection claim fails because it is a mere restatement of its First Amendment claim and based on the same facts. See Uphoff Figueroa v. Alejandro, 597 F.3d 423, 426 (1st Cir. 2010) ("Political discrimination and retaliation claims under the First Amendment cannot be restated as claims under the Equal Protection Clause"); Prisma Zona Exploratoria, 310 F.3d at 8 ("To the extent that this claim pretends to be anything more than a restatement of the failed First Amendment claim, it too is undeveloped and abandoned.").

Rosaura has also failed to make an argument as to how it was similarly situated to the favored contractor. It simply states without explanation that this competitor was awarded the contract based on political favoritism, even though its facilities were allegedly not as suitable for the municipal government's use. Rosaura points to nothing in the summary-judgment record that might shed light on the "similarly situated" prong of the equal protection analysis, or that it belongs to a protected category. Accordingly, Rosaura's equal protection claim also fails.

### III. Conclusion

For the reasons foregoing we hold that Rosaura failed to state a First Amendment retaliation cause of action, and failed to state an equal protection claim. Therefore, we need not address at

this time whether <u>Umbehr</u> protections extend to first time government contractors.  The district court's judgment is affirmed.

**<u>AFFIRMED</u>**.