# United States Court of Appeals
## For the First Circuit

No. 21-1729

ANTHONY GATTINERI; BOSTON CLEAR WATER COMPANY, LLC,

Plaintiffs, Appellants,

v.

TOWN OF LYNNFIELD, MASSACHUSETTS; PHILIP B. CRAWFORD; JAMES M.
BOUDREAU; ROBERT J. DOLAN; ROBERT CURTIN; DAVID J. BREEN; PAUL
MARTINDALE; ELIZABETH ADELSON; KRISTIN MCRAE; JOSEPH
O'CALLAGHAN; WINNIE BARRASSO; PATRICK MCDONALD; JENNIFER WELTER;
EMILIE CADEMARTORI,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Gelpí, Howard, and Thompson,
Circuit Judges.

Julie K. Connolly, with whom Julie Connolly Law PLLC, Kelley
A. Jordan-Price, Tara A. Singh, and Hinckley Allen & Snyder LLP
were on brief, for appellants.
Adam Simms, with whom John J. Davis, Justin L. Amos, and
Pierce Davis & Perritano LLP were on brief, for appellees.

January 23, 2023

**THOMPSON**, **Circuit Judge**.  Appellants Anthony Gattineri (Gattineri) and Boston Clearwater Company LLC (BCW, and with Gattineri, Appellants) appeal from the dismissal of their sweeping complaint brought against the Town of Lynnfield, Massachusetts and a slew of the town's agencies and employees (Lynnfield, to keep it simple) after animosity between the parties over Appellants' spring water business boiled over.  Because we write primarily for the parties -- all of whom are familiar with the facts in the operative complaint and how the case got here -- we offer only a brief summary of the relevant background before cutting to the chase:  We affirm the dismissal below.

Since 2014, Appellants have owned and operated the Pocahontas Spring (the Spring) in Lynnfield, Massachusetts, where they sought to revive a once-thriving spring water business and maintain the Spring as a source of healing water for Native Americans.  Appellants' ambitions on both fronts clashed with Lynnfield's authority to regulate any work done to alter the Spring's property, as it sits on protected wetlands subject to certain state and local regulations.  See, e.g., Mass. Gen. Laws ch. 131, § 40 (2014) (Wetlands Protection Act); 310 Mass. Code Regs. §§ 10.02(2), 10.04, 10.05(4) (Wetlands Regulations).  The gist of Appellants' complaint is that Lynnfield wanted to drive BCW and Gattineri out of town:  Lynnfield wanted BCW gone so they could use the Spring to supplement the town's own water supply,

- 2 -

garner additional tax revenue, and aid a nearby real estate development; and regarding Gattineri, Lynnfield despised his association with Native Americans and suspected that his Italian heritage meant he had mob ties. So, Appellants charge, Lynnfield hatched a vast conspiracy between the town's agencies (the Lynnfield Conservation Commission, Board of Selectmen, Building Department and Police Department), employees, and several neighbors (some named, others not) where the neighbors would lodge false complaints about allegedly unlawful activities at the Spring and Lynnfield would respond, using their regulatory authority, under the guise of legitimate enforcement, to intimidate Appellants and interfere with their business and Gattineri's constitutional rights.[1]

Certain that Lynnfield's actions were unlawful, Appellants claimed violations of their First and Fourteenth Amendment rights, see 42 U.S.C. § 1983, and that Lynnfield conspired to violate those rights, see 42 U.S.C. § 1985, and failed to prevent violations of those rights, see 42 U.S.C. § 1986, among other claims not relevant here (ten in all). The district court

---

[1] For the curious reader wanting more of the backstory, we point to the district court's recap of the facts, which aptly took on the formidable task of stitching together a coherent narrative based upon Appellants' seventy-page complaint, which we note overflowed with conclusory allegations yet omitted critical context. See Gattineri v. Town of Lynnfield, No. 1:20-CV-11404-IT, 2021 WL 3634148, at *1-7 (D. Mass. Aug. 17, 2021).

- 3 -

granted Lynnfield's motion to dismiss, and Appellants brought their case to us.[2]

---

[2] Our de novo review of a complaint owes no deference to the district court's review of the same. See Dagi v. Delta Airlines, Inc., 961 F.3d 22, 27 (1st Cir. 2020). Yet as a threshold argument Appellants spill considerable ink attacking the scope of the district court's review on two fronts: (1) that it erroneously considered facts from related state court decisions, and (2) that it miscalculated the statute of limitations start date on their § 1983 claims. Given our standard of review and the reasons behind our affirmance, we need not resolve these arguments, let alone address them, but we offer a brief note on the first.

Appellants argue that the district court should not have pulled in facts from judicial opinions in BCW's related state court litigation to discredit allegations in their complaint because these judgments did not warrant preclusive effect -- that is, they were not final, and the facts within them were contested. In response, Lynnfield simply asserts, without explanation, that Appellants are wrong on the law, and the district court was right, because a court may judicially notice another court's opinion on a motion to dismiss, full stop. These arguments miss all the nuance to our inquiry -- as we have explained, the extent to which a court may consider a public record (here, facts from another opinion) outside the four corners of the complaint depends upon whether that record, or the facts within it, are susceptible to judicial notice under Federal Rule of Evidence 201. See Freeman v. Town of Hudson, 714 F.3d 29, 36-37 (1st Cir. 2013); Rodi v. S. New England Sch. Of L., 389 F.3d 5, 18-19 (1st Cir. 2004). Though our court has not addressed a scenario like this one, where the district court assumed the truth of facts from another judicial opinion to kick out contrasting allegations in a complaint, our sister circuits agree that Rule 201 does not support such a move. See, e.g., Est. of Lockett by & through Lockett v. Fallin, 841 F.3d 1098, 1111 (10th Cir. 2016); Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 576 (6th Cir. 2008); Lee v. City of L.A., 250 F.3d 668, 689-90 (9th Cir. 2001); S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998). We say no more today; not only does this issue have no bearing on our reasons for affirming the dismissal, but the parties have also not properly briefed us on the issue.

On appeal, we consider whether Appellants' arguments compel us to revive their First Amendment claims.[3] In short, they do not.

To state a First Amendment retaliation claim, Appellants' complaint "must allege that '(1) [Gattineri] engaged in constitutionally protected conduct, (2) [he was] subjected to an adverse action by [Lynnfield], and (3) the protected conduct was a substantial or motivating factor in the adverse action.'" Falmouth Sch. Dep't v. Doe on behalf of Doe, 44 F.4th 23, 47 (1st Cir. 2022) (quoting D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012)). The third prong of this test asks whether Appellants have alleged that Lynnfield had "retaliatory animus." Id. (quoting Maloy v. Ballori-Lage, 744 F.3d 250, 253 (1st Cir. 2014)). And to succeed, Appellants must show that Lynnfield's "retaliatory animus" was the "but-for" cause of Gattineri's injuries, "meaning that the adverse action against

---

[3] In their complaint, Appellants roughly described their First Amendment counts as a "Deprivation" of Gattineri's rights, one "Freedom of Assembly" and one "Free Exercise" claim (counts 1 and 2, respectively). The district court analyzed the claims as such, concluding that Appellants failed to plausibly state substantive violations of either clause of the First Amendment. But Appellants have made no argument before us, and likewise did not argue below, that they have stated freedom to associate or free exercise claims. Instead, they argue only that they have stated First Amendment retaliation claims, so we follow their lead in assessing counts 1 and 2. See Rosaura Bldg. Corp. v. Mun. of Mayagüez, 778 F.3d 55, 65 (1st Cir. 2015) (following Appellants' framing of their First Amendment claims as retaliation claims rather than substantive violations of the First Amendment).

[him] would not have been taken absent the retaliatory motive." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (citing Hartman v. Moore, 547 U.S. 250, 259-60 (2006)).

Unfortunately, both sides' briefs provide little guidance on these claims. Lynnfield failed to pick up on the basic fact that Appellants argued First Amendment retaliation claims, so we don't have the benefit of their opposing arguments at all. And Appellants' argument, as briefed for us, boils down to a bare-naked statement that their complaint "sets forth specific factual allegations of multiple adverse acts" against Gattineri "based on his exercise of First Amendment rights," and that "the protected conduct was a substantial or motivating factor" behind those actions. They then simply cite some twenty allegations in their complaint with a "see, e.g." -- containing, we gather, the "multiple adverse acts" supposedly taken against Gattineri because he exercised his First Amendment rights. That's it.

Appellants' failure to adequately brief the two claims that could revive their lawsuit proves fatal. Appellants have not fleshed out or explained any of the allegations they cite to at all, so we would be left to our own devices trying to guess the basics from the complaint's turgid paragraphs, some spanning close to a page. For example, we have no idea from the briefing what the adverse act in each complaint paragraph even is, since some contain several events packed into one. After telling us about

each adverse act, Appellants should have then explained its connection to Gattineri's exercise of his rights. But they didn't. Compounding the utter lack of factual explanation, Appellants also fail to cite or analyze any on-point authority to convince us that their allegations state a claim as a legal matter -- we have decades of First Amendment retaliation case law to pull from. When, like here, briefing comes up this short, we find the issues waived. See Rodriguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (finding waiver and noting that "[j]udges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority").

Separate and apart from the First Amendment retaliation claim we just discussed, Appellants say they've stated a retaliation claim based upon, what they call, their "fundamental right to earn a living." But this flavor of a retaliation claim is doomed from the start because they have not shown that the "right to earn a living" is constitutionally protected conduct (element one of a retaliation claim).

The district court tossed this claim, citing our decision in Medeiros v. Vincent, 431 F.3d 25, 32 (1st Cir. 2005), where we explained that "[t]he right to 'make a living' is not a 'fundamental right,' for either equal protection or substantive due process purposes." Attempting to skirt around Medeiros,

Appellants say they have not alleged an equal protection or substantive due process violation; rather, that their "right to earn a living" is constitutionally protected by the Constitution's Privileges and Immunities Clause.

Appellants' arguments about the Privileges and Immunities Clause come up short. Appellants attempt to argue that our precedents have recognized that the Privileges and Immunities Clause protects a fundamental right to earn a living. See Piper v. Supreme Ct. of New Hampshire, 723 F.2d 110, 118 (1st Cir. 1983), aff'd 470 U.S. 274 (1985). We first note that there are two versions of the Clause, the first in Article IV § 2 (Privileges *and* Immunities Clause) and the second in the Fourteenth Amendment (Privileges *or* Immunities Clause), with distinct applications. See Baldwin v. Fish & Game Comm'n of Montana, 436 U.S. 371, 382 (1978) (Article IV § 2 "prevents a State from discriminating against citizens of other States in favor of its own.") (citations omitted); Saenz v. Roe, 526 U.S. 489, 503 (1999) (quoting Slaughter-House Cases, 16 Wall. 36, 80 (1872), and explaining that the Fourteenth Amendment's Privileges or Immunities Clause provides a citizen of one State "with the same rights as other citizens of that State"). Appellants appear to have pled and argued the latter, but they rely upon Piper, which addressed Article IV § 2 and, if anything, would protect the right to pursue work in a state where that individual is a nonresident. See Piper,

- 8 -

470 U.S. at 280-81, 281 n.10.  Here, even if Appellants claimed the Article IV § 2 version, all parties are Massachusetts residents, so they get nowhere.  As to the Fourteenth Amendment version of the Clause, Appellants have pointed to no authority, nor have we found any, holding that it provides for a fundamental right to earn a living.  Cf. Head v. New Mexico Bd. of Examiners in Optometry, 374 U.S. 424, 432 n.12 (1963) ("[T]he Privileges [or] Immunities Clause of the Fourteenth Amendment does not create a naked right to conduct a business free of otherwise valid state regulation.") (citing Madden v. Kentucky, 309 U.S. 83, 92—93 (1940)).[4]

We make quick work of the rest of Appellants' claims. Without any viable § 1983 claims to anchor Appellants' § 1985(3) conspiracy to violate their civil rights claim, we, like the district court, see no need to delve into it.  See United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott, 463 U.S. 825, 833 (1983) (explaining that because "[t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment," claimant must be able to state infringement of that right); accord Thornton v. City of St. Helens,

_____

[4] Without any new life to Appellants' § 1983 claims, we need not address Lynnfield's argument that the officials enjoy qualified immunity.  See Falmouth Sch. Dep't, 44 F.4th at 47.

425 F.3d 1158, 1168 (9th Cir. 2005) (noting that a plaintiff cannot state a § 1985(3) claim where they are unable to state a § 1983 claim based upon the same facts).  That conclusion extinguishes the § 1986 claim (failure to prevent the conspiracy), too, because violations of § 1986 necessarily depend upon a preexisting violation of § 1985.  See 42 U.S.C. § 1986; accord Hahn v. Sargent, 523 F.2d 461, 470 (1st Cir. 1975).  And with no viable federal claims, we decline to exercise our supplemental jurisdiction over the state-law claims, which covers the rest.  See Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 546 n.5 (1st Cir. 2021).

With that, we **affirm** the district court's dismissal. Each side shall bear its own costs.